UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA S. ELLIS,

    Plaintiff                                            Civil Action No. 06-12759

v.

                                                      District Judge Avern Cohn
                                                      Magistrate Judge R. Steven Whalen

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Linda S. Ellis brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Social Security Disability benefits. Before the Court are the parties' cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion be DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 9, 2003, alleging disability as of October 10, 2002 (Tr. 52-54). After the initial denial of her application, Plaintiff made a timely request for an administrative hearing, held on June 15,

2005 in Birch Run, Michigan (Tr. 200). Administrative Law Judge ("ALJ") Richard Wurdeman presided. Plaintiff, represented by attorney Barry Keller testified, as did Medical Examiner ("ME") Louise Centers and Vocational Expert ("VE") Mary Williams (Tr. 202-250). On November 18, 2005, ALJ VWurdeman found that Plaintiff was not disabled because although unable to perform any of her past relevant work, she retained the residual functional capacity ("RFC") to perform a significant range of work at all exertional levels (Tr. 18). On April 11, 2006, the Appeals Council denied review (Tr. 6-8). Plaintiff filed a complaint in this Court on June 22, 2006.

## BACKGROUND FACTS

Plaintiff, born April 19, 1957, was 48 when the ALJ issued his decision (Tr. 19, 52). She completed three years of college, working previously as an account executive, branch recruiter, and executive secretary (Tr. 65, 68). Plaintiff alleges disability due to depression (Tr. 64).

### A. Testimony of Medical Examiner

*Prior to testimony, Plaintiff's attorney submitted that his client was disabled as a result of depression and polysubstance abuse disorder* (Tr. 200-201).

Dr. Louise Centers, holding a PhD in psychology, testified that her former practice included the treatment of substance abuse disorders (Tr. 203). Centers stated that she currently treated patients for depression, bipolar disorder, and marital problems (Tr. 204). Centers acknowledged that she also held a law degree, but was not currently practicing (Tr. 204-205).

Based on Plaintiff's medical records, Centers opined that Plaintiff experienced "major depression current," adding that her condition did not meet or equal a listed impairment (Tr. 207). Noting that Plaintiff's "mild" depression had been exacerbated by her grandmother's death, Centers estimated that Plaintiff should experience recovery after six months to a year (Tr. 207). She added that even taking into account the death of Plaintiff's grandmother, her medical records failed to show a degree of severity sufficient to meet a listing (Tr. 207-208). She stated that the Psychiatric Review Technique ("PRTF") completed by a state-hired physician (*see* Tr. 109-122) was "an accurate evaluation" of Plaintiff's condition (Tr. 209).

Again relying on Plaintiff's treating records, Centers opined that while depression and substance abuse might have prevented Plaintiff from performing her past relevant work, her condition did not render her totally disabled (Tr. 210-211). Centers stated that if Plaintiff were receiving less than optimal therapy, she would nonetheless retain the ability to cope with work demands (Tr. 213-214). Centers allowed that depression could affect Plaintiff's work attendance, but noted that her daily activity log indicated that she was capable of maintaining a normal schedule (Tr. 215-216). Centers concluded "with a reasonable degree of medical certainty that [Plaintiff] could have sustained work for a significant period" while experiencing depression and recovery from polysubstance abuse (Tr. 219).

### B. Plaintiff's Testimony

Plaintiff, a resident of Flint, Michigan, testified that she was "two semesters shy of a Bachelor's [degree] in business administration" (Tr. 222). She related that she ceased work

in 2002 due to a substance abuse problem, adding that she had been "clean" for the past 19 months (Tr. 222-223). She indicated that she attended narcotics anonymous ("NA") meetings regularly and treated with a psychologist at Catholic Charities once a month (Tr. 223). She stated that had been receiving primary care treatment from Liza Weathersby, M.D. for approximately one year and a half (Tr. 224). Plaintiff reported that she currently took Paxil, Claritin, Ibuprofen 600, and a water pill for hypertension (Tr. 224).

Plaintiff testified that she typically arose at 8:00 a.m. and retired at midnight, adding that her waking hours were spent reading, performing household chores, and going to meetings (Tr. 224-225). She alleged side effects from Paxil of irritability, aggressiveness, and mood swings (Tr. 226). She estimated that she experienced irritability three to four days a week and a mood swing once or twice a week, noting however that she no longer experienced the side effect of nausea (Tr. 226).

Plaintiff opined that she was unable to resume her job as a staff consultant for an employment agency due to her inability to work around other people, but expressed hope that upon completing rehabilitation that she could go back work (Tr. 227-228). She expressed frustration that her illness prevented her from being "a productive member of society" (Tr. 229). She testified that she was deeply affected by her grandmother's 2003 death, adding that outside of family ties and contacts made through therapy, she had few social contacts[1] (Tr. 232). She indicated that she her hypertension medication created drowsiness (Tr. 232).

---

[1] A treating source's records, created in July, 2003 states that Plaintiff's grandmother died in August, *2002. See* footnote 5, *infra* (Tr. 102).

She alleged daily naps lasting from two to "a few" hours (Tr. 233).

Plaintiff testified that before moving to Michigan in 2004 to be with her family, she had abused cocaine (Tr. 235-236). She reiterated that she avoided attending concerts and social events, stating that she was "afraid of my own aggression," adding that she had recently gotten into a "screaming match" with one of her parents' tenants (Tr. 238). Stating that she wanted to get "better," Plaintiff alleged that her current treatment was compromised by her lack of health insurance (Tr. 239). She concluded her testimony by admitting that she had considered looking for work, stating that she was inhibited by the belief that she was incapable of employment (Tr. 240).

### C. Medical Evidence

#### i. Treating Sources

In July, 2003, Michelle S. Pietrugga, PhD completed a "Mental Disorder Questionnaire Form," stating that Plaintiff exhibited symptoms of depression such as sadness, loss of appetite, insomnia, loss of self esteem, and guilt, and noting further that her condition had been intensified by her grandmother's August, 2002 death (Tr. 102). Pietrugga recorded that Plaintiff, a long time drug abuser, had remained clean for four years before relapsing in 2001 (Tr. 103). She observed that although Plaintiff appeared "capable of interacting appropriately" with family and friends, she allowed for the possibility that Plaintiff's concentrational abilities were compromised by depression (Tr. 104). Pietrugga concluded by stating Plaintiff's "ability to adapt to stress common to work environment . . . is impaired due to depression," noting further that Plaintiff's condition "may improve in

[one] year" if she continued treatment on a regular basis (Tr. 105).

In December, 2003, Plaintiff sought treatment with the Catholic Charities of Shiawassee and Genessee Counties for depression (Tr. 193). Plaintiff admitted to prior cocaine use, but denied using illicit drugs currently (Tr. 192). Plaintiff presented as attractive and pleasant, reporting that in addition to a history of drug abuse, she experienced an abusive relationship with her former husband (Tr. 188). In January, 2004, Kimberly Hayek, M.A., noting both depression and cocaine dependence, assigned Plaintiff a GAF of 51[2] (Tr. 191). The same month, Anjana Bhrany, M.D. prescribed Paxil (Tr. 130). In March, 2004, a psychiatric evaluation by Hurley Mental Health Associates noted that Plaintiff alleged depression characterized by isolation, mood swings, and low self esteem (Tr. 131). Plaintiff reported that she enjoyed good family relations, relating further that she attended daily NA meetings and continued to perform household and shopping chores (Tr. 132). Plaintiff received a prognosis of "guarded," with a GAF of 50[3] (Tr. 134). She was deemed unable to manage her own funds (Tr. 135). Kimberly Hayek continued to counsel Plaintiff, noting in April, 2004 that although Plaintiff was "not able to work, she can make future goals for

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*) (4th ed.2000).

[3] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR*) (4th ed.2000).

work" (Tr. 177). In June, 2004, Plaintiff indicated that she had recently begun a relationship, but did "not trust herself to make the right decision" (Tr. 166). Hayek noted that Plaintiff displayed "fairly good insight" about her recovery (Tr. 166). September, 2004 therapist's notes characterize Plaintiff as "pleasant, articulate, cooperative" and "open, very bright" (Tr. 157). In November, Plaintiff assessed her current state as "4 ½" on a scale of one to 10, but reported that a relationship begun several months earlier continued to flourish (Tr. 152).

### ii. Consultive and Non-Examining Sources[4]

A Psychiatric Review Technique performed in July, 2003 found that Plaintiff experienced both affective and substance addiction disorders (Tr. 109). The assessment found further that Plaintiff experienced mild restrictions in daily living; social functioning; and maintaining concentration, persistence, or pace (Tr. 119). Noting that Plaintiff had initially exhibited "poor compliance with therapy," the report concluded nonetheless that she retained the ability to complete every day . . . routines and follow simple written/oral instructions" (Tr. 121). A Mental Residual Functional Capacity Assessment performed the same day found the absence of significant work-related limitations as a result of depression except for *moderate* limitations in understanding, remembering, and carrying out detailed instructions the ability to interact appropriately with the general public (Tr. 123-124).

### D. Vocational Expert Testimony

VE Mary Williams, classifying all of Plaintiff's past relevant work as sedentary,

---

[4]Non-examining sources also include the hearing testimony of Dr. Louise Centers, summarized in Section A., *supra.*

found her work as an executive branch and executive secretary skilled; and her work as transcriptionist and as a supervisor of telemarketing, semi-skilled (Tr. 241-242). She testified that Plaintiff's work as a transcriptionist did not require public contact, adding that all of her former jobs required "a continuous high level of focus or concentration" (Tr. 242)

The ALJ posed the following hypothetical question:

"[L]et's assume we have an individual of Ms. Ellis' age, vocational educational background, let's assume she's unimpaired physically, but has the following conditional limitations, to wit: She should be precluded from activities requiring significant contact or interaction with the public, activities requiring significant interaction with . . . co-workers, in other words, team kind of activities, and activities that . . . require a continuous high level of focus or concentration, would past work or any other work which exists in the regional or national economy such a person could perform? "

(Tr. 242). The VE testified that given the above limitations, examples of work Plaintiff could perform included the light, unskilled work of a housekeeper (15,100 in the regionally economy), kitchen worker (14,900), and inspector (12,900) (Tr. 243). The VE found that the above jobs could tolerate a maximum of one absence per month (Tr. 243).

In response to questioning by Plaintiff's attorney, the VE stated that if drowsiness as a result of medication caused such an individual to nap on a daily basis, or alternatively, become verbally abusive, all work would be precluded (Tr. 245).

*Plaintiff's attorney concluded by acknowledging that because his client alleged that she left work because of polysubstance abuse, she would not be eligible for benefits between the time she ceased work (October 10, 2002) and the alleged onset of major depression when*

*her grandmother died on August 10, 2003*[5] (Tr. 249).

### E. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Wurdeman found that Plaintiff experienced the severe impairment of depression , but did not experience an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 18). The ALJ determined that although Plaintiff could not perform any of her past relevant work, she possessed the residual functional capacity ("RFC") to perform

> "a full range of work[] at all exertional levels. She is limited by her depressive disorder in the following manner: no significant contact or interaction with the public; no significant interaction with coworkers; no continuous high level of focus or concentration"

(Tr. 17).

Adopting the VE's job numbers, the ALJ concluded that Plaintiff could perform the work of a housekeeper, kitchen worker, and inspector (Tr. 17). The ALJ concluded that Plaintiff's testimony was "not credible to the extent alleged," noting that Plaintiff continued to perform chores and interacted with her family, pointing out further that although Plaintiff reported a degree of drowsiness as a result of medication "there is not anything in the record that would support an alleged need to lie down and nap several hours a day (Tr. 17).

## STANDARD OF REVIEW

---

[5] However, as stated above, treating psychologist Michelle Pietrugga noted in July, 2003 that Plaintiff's grandmother had passed away in August, *2002* (Tr. 102). Further, the ALJ's decision lists the original onset of disability date of October 10, 2002 (Tr. 14).

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff argues that the ALJ erred in discounting her allegation that her medications made her drowsy, contending that he failed to "identify with specificity" what portions of her testimony lacked credibility. *Plaintiff's Brief* at 5. She further submits that ALJ the ignored evidence supporting her need for continued treatment before resuming work *Id.* at 5-6. Plaintiff also argues that the RFC overstated her work abilities by failing to incorporate her need to take lengthy naps on a daily basis. *Id.* at 6.

The credibility determination is guided by SSR 96-7p, which further describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." Second, SSR 96-7p mandates that:

-11-

> "the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

*Id.*

Further, if applicable, C.F.R. 404.1529(c)(3) requires the ALJ to consider factors such as the "type, dosage, effectiveness, and side effects" of medication when considering a claimant's allegations.

In the present case, the ALJ's finding that Plaintiff did not experiencing disabling side effects from Paxil or hypertension medication stands well supported by record evidence. First, although Plaintiff faults the ALJ for failing to discuss her side effects with "specificity," the administrative decision permissibly noted that the record contained a dearth of evidence "that would support an alleged need to lie down and nap several hours a day" (Tr. 17). Although counseling notes from July, 2003 to November, 2004 show that Plaintiff exhibited mood swings, loss of self esteem, and sadness, none of these treating sources observed that Plaintiff's work abilities were impaired by the need to nap for extended periods over the course of a day. Further, in reviewing Plaintiff's counseling records and activities of daily living ("ADLs"), Dr. Centers found that Plaintiff demonstrated the ability to maintain a normal schedule (Tr. 215-216).

I also disagree with Plaintiff's related argument that the ALJ erred in rejecting her contention that she required further treatment before attempting work. None of Plaintiff's

treating sources opined that she was ever incapable of all employment. In July, 2003, although psychologist Michelle Pietrugga acknowledged that Plaintiff's ability to work was "impaired" as a result of depression, she did not find that all employment was precluded (Tr. 105). In response to Plaintiff's allegation that her condition was compromised by inadequate treatment, Dr. Centers indicated that such a limitation would inhibit, rather than prevent, gainful work activity (Tr. 213-214).

Finally, although Plaintiff also faults the ALJ for composing an RFC which she contends does not fully account for limitations created by her medication's side effects, as stated above, the ALJ reasonably rejected the allegation that she required long daily naps based on the lack of record support. The rule that "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals," is applicable to the virtually identical RFC found in the administrative opinion (Tr. 18). *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

If anything, the record shows that the ALJ took pains to include a number of Plaintiff's allegations, including claims with minimal record support. For instance, although the RFC contains a restriction on contact with the public or coworkers, along with a preclusion on work requiring a "high level of focus or concentration," treating records state that Plaintiff repeatedly presented as attractive, pleasant, well groomed, and "very bright" (Tr. 157, 166, 188). Although she claimed that she lacked the wherewithal to hold a full time job due to social withdrawal, Plaintiff admitted in November, 2004 that she continued to

sustain a romantic relationship begun several months earlier (Tr. 152). Plaintiff acknowledged further that she enjoyed generally good relationships with family members (Tr. 236).

This Court notes in closing that its conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize Plaintiff's legitimate impairments as a result of substance abuse and depression. However, the latitude generally accorded an ALJ's credibility determinations is appropriate in the present case. *See Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993) Based on a review of this record as a whole, the ALJ's decision, well supported by substantial evidence, is within the "zone of choice" accorded to the fact-finder at the administrative level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## **CONCLUSION**

For the above reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

    s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 29, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 29, 2007.

s/Susan Jefferson
Case Manager